IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KORTNEY MCGEE,<br><br>            Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>            Defendant. | CV 19-43-TJC<br><br>**ORDER** |

Plaintiff Kortney McGee ("McGee") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  (Doc. 1.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is McGee's motion for summary judgment, seeking reversal of the Commissioner's denial, and remand for an award of disability benefits or alternatively for further administrative proceedings.  (Doc. 9.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 9-11.)

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court finds the ALJ's decision should be AFFIRMED.

## I. Factual Background

This matter has been ongoing since October 2007 and has involved multiple hearings, denials, reconsiderations, administrative appeals, and judicial reviews. Thus, the parties are well-versed in the underlying facts of the case, having filed hundreds of pages in briefing. The Court will therefore confine this background to the current procedural posture of the case.[1]

The U.S. District Court for the District of Montana has twice reviewed the Commissioner's denials of McGee's original 2007 application for benefits. The first judicial review came after McGee appealed the denial of her request for benefits on September 19, 2011. *See McGee v. Astrue*, CV 11-63-GF-SEH, 2012 WL 2711541 (D. Mont. June 14, 2012). U.S. Magistrate Judge Keith Strong entered Findings & Recommendations on June 14, 2012, recommending that the ALJ decision be affirmed. *Id.* District Court Judge Sam Haddon adopted Judge Strong's Findings & Recommendations on July 9, 2012. *McGee v. Astrue*, No. CV-11-63-GF-SEH, 2012 WL 2746548. (D. Mont. July 9, 2012).

McGee then timely appealed to the Ninth Circuit Court of Appeals, where the appellate court affirmed in part and reversed and remanded in part. *McGee v. Colvin*, 556 F. App'x 616, 617 (9th Cir. 2014). The appellate court held that the

---

[1] A more complete account of the factual background may be found in Judge Strong's Findings and Recommendations in *McGee v. Astrue*, CV 11-63-GF-SEH, 2012 WL 2711541, Doc. 21 (D. Mont. June 14, 2012).

ALJ's findings that "McGee did not have *any* significant non-exertional limitations" was not supported by substantial evidence and specific, clear and convincing reasons. *Id.* at 618 (emphasis original). Specifically, the court ruled that the record failed to show "McGee's urinary issues were fully controlled, such that she might not have the limitation of needing ready access to a restroom at work." *Id.* Next, the record did not support "the broader conclusion that McGee has no significant limitations with her right hand and arm." *Id.* Last, the ALJ failed to "explain why the inability to walk or stand for more than an hour at a time is not itself a significant non-exertional limitation." *Id.* On remand, the Commissioner was instructed to make additional findings with respect to McGee's non-exertional limitations. *Id.*

After remand, a hearing was held, and McGee's benefits were again denied. (*See* A.R. 476-498.) McGee then sought her second judicial review before this Court. See *McGee v. Berryhill*, CV-16-39-BLG-TJC, 2018 WL 1378750 (D. Mont. Mar. 19, 2018). This Court affirmed the Commissioner's determinations in part, finding that the ALJ satisfied the Ninth Circuit's instructions as to McGee's limitations with her right hand and arm, as well as with her inability to stand for more than an hour at a time. 2018 WL 1378750, at *11. The Court reversed in part, however, relating to the ALJ's treatment of McGee's urinary incontinence, and identified two shortcomings. *Id.* at *12.

First, this Court noted that the residual functional capacity ("RFC") failed to "allow for ready access to a restroom, as the Ninth Circuit required the ALJ to consider." *Id.* Second, the ALJ did not define what was meant in the RFC by allowing for "a normal break schedule" or "mid-shift" breaks, when discussing McGee's access to a restroom. *Id.* The Court also found that the ALJ failed to provide specific, clear, and convincing reasons for rejecting McGee's testimony relating to her urinary incontinence. *Id.* at *13. Thus, the Court remanded for further proceedings to comply with the Ninth Circuit's order. *Id.* at *16.

On remand, the ALJ held another hearing on October 10, 2018 and rendered an adverse decision December 20, 2018. (A.R. 1100, 1104, 1136.) In considering McGee's RFC, the ALJ found she could perform light work and could sit 1.5 hours at a time, "with breaks either for several minutes during normal and mid-shift breaks (standardized breaks, which are typically the middle of an 8-hour shift or every 2 hours) or a simple break to stand and stretch or walk before returning to a seated position (taking less than a minute)." (A.R. 1118.) The ALJ also found McGee "would need ready access to a restroom and a restroom break of 3-4 minutes every hour and a half." (*Id.*) The ALJ reasoned "[w]ith those breaks, the claimant could work 8 hours in a seated position." (*Id.*) In sum, the ALJ concluded that the RFC "accounts for incontinence by restrictions that the claimant needs ready access and bathroom breaks every 90 minutes." (A.R. 1119, 1122.)

Given this RFC, the ALJ adopted the testimony of a vocational expert, and found "that since attaining age 18, [McGee] has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 1126). Thus, the ALJ concluded that McGee was not disabled. (*Id.*)

McGee subsequently filed this action, seeking judicial review of the ALJ's decision.[2]

## II. Legal Standard

### A. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

---

[2] McGee has requested a closed period of disability from September 1990 to January 1, 2015. (A.R. 1103, 1119.) McGee attained the age of 18 on September 10, 2008. (A.R. 1108.) The ALJ found that she was not disabled under the Social Security Act before attaining age 18, and McGee has not requested review of that determination here. (A.R. 1115.) Therefore, the effective closed period of disability at issue is between September 10, 2008 and January 1, 2015.

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the

     claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

     McGee contends the ALJ erred at step five in finding that she was capable of doing work that existed in sufficient numbers in the national economy.

### III.  Discussion

     McGee questions whether substantial evidence supports the denial of benefits, primarily taking issue with the ALJ's discounting her testimony relating to the intensity, persistence, and limiting effects of her symptoms.  (Doc. 9 at 5-6.)  McGee also argues that the Commissioner did not comply with this Court's March 19, 2018 Order by not accounting for emergency use of a restroom.  (*Id.* at 17.)

     The Court will address each issue in turn.

#### A.  McGee's Credibility

     McGee broadly questions whether substantial evidence supports the denial of her benefits.  (Doc. 9 at 5.)  In briefing, McGee specifically takes issue with the ALJ's discounting her testimony.  She argues that "[t]he medical evidence fully supports the testimony of Kortney McGee relative to the severe and debilitating

8

limitations caused by her cerebal [*sic*] palsy, hemiplegia on the right, urinary incontinence, and seizures."). (*Id.* at 6.)

It should first be noted, however, that the Court previously determined that the ALJ properly discounted McGee's testimony with respect to her physical limitations. In *McGee v. Berryhill*, this Court found:

> The ALJ did present clear and convincing reasons for discrediting some of Plaintiff's testimony regarding her physical limitations, including that she walked without difficulty at the hearing, had a normal gait, did not change positions at the hearing, and that she conducts daily activities inconsistent with her claimed symptoms.

*McGee v. Berryhill*, 2018 WL 1378750, at *13 (citing A.R. 486, 495).

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). In *Stacy*, the Ninth Circuit expressly held the law of the case doctrine applies in the social security context. *Id.* Thus, the law of the case doctrine precludes the re-litigation of issues that were settled by the district court's prior remand order, unless (1) the evidence on remand is substantially different, (2) the controlling law has changed, or (3) if applying the doctrine would be unjust. *Id.*

District courts in the Ninth Circuit have historically declined to reconsider issues that were decided by a prior remand order. *See e.g. Pearson v. Chater*, 1997 WL 314380, *3 (N.D. Cal. Feb. 20, 1997) ("Under the law of the case doctrine,

this court will not re-examine its legal decision that the ALJ had sufficient reasons to discount Dr. Newkirk's testimony."); *Neuvirth v. Astrue*, 2011 WL 2470676, *5 (E.D. Wash. June 20, 2011) (finding it would be error for the court to reconsider whether the ALJ properly discounted a medical source's opinion where the district court's prior remand order expressly affirmed the ALJ's reason for rejecting the opinion).

Here, the Court previously determined the ALJ gave sufficiently clear and convincing reasons for discounting McGee's testimony with respect to her physical limitations. *McGee*, 2018 WL 1378750, at *13. The Court finds none of the three exceptions to the law of the case doctrine are applicable with respect to this issue. Accordingly, the Court declines to re-examine its prior determination that the ALJ did not err in making his credibility determination regarding McGee's physical limitations.

The Court did not, however, make the same determination regarding McGee's complaints of urinary incontinence, finding instead that "the ALJ failed to cite specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding her urinary incontinence." *Id.* Thus, the Court will turn to the ALJ's reasons for discounting McGee's testimony as it relates to urinary continence.

McGee argues that the ALJ made only general credibility findings as to her testimony regarding urinary incontinence, without providing any specific, clear and convincing reasons.  (Doc. 9 at 30.)

The Commissioner asserts that the ALJ properly determined McGee was not credible because medical records were not consistent with her allegations of frequent major accidents that required her to stop, clean up, and change for 30 minutes at a time.  (Doc. 10 at 12-13.)

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d at

722 (quoting *Lester*, 81 F.3d at 834)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

The first step of this credibility analysis is not at issue. The ALJ determined that McGee's medically determinable impairments could be reasonably expected to produce the alleged symptoms. (A.R. 1109.) Further, the ALJ did not present findings that McGee is malingering. Therefore, the ALJ was required to provide

clear and convincing reasons for rejecting McGee's testimony regarding her symptoms. The Court finds the ALJ did so.

The ALJ found that while McGee's testimony was mostly consistent with the medical evidence, "the claimant's statement concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence." (A.R. 1109, 1119.) Specifically, the ALJ took issue with McGee's testimony relating to the frequency of her incontinence, particularly the frequency of "complete loss" incidents. (A.R. 1120, 1122.) The ALJ concluded the "need for longer breaks several times per week is not justified by the treatment history …" (A.R. 1122-23.) In reaching his conclusion, the ALJ properly identified specific aspects of Plaintiff's testimony he found not credible and cited specific evidence he believed contradicted that testimony. *Reddick*, 157 F.3d at 722; *Brown-Hunter*, 806 F.3d at 489. The ALJ reasoned that "the record shows improvement in incontinence symptoms and generally does not distinguish the intensity of accidents, such as wetting or leaking or whether the claimant was required to completely change." (A.R. 1120.)

The Court also finds that substantial evidence in the record supports the ALJ's conclusions. The ALJ compared McGee's testimony in the 2008 and 2015 hearings with her medical records, finding the clinical discussion in the records reflected less drastic issues than the complete loss incidents suggested in her

testimony. (*Id.*, citing A.R. 346.) In 2010, for example, the ALJ notes that McGee reported stability in her symptoms but nocturia developing as possibly related to an acute urinary tract infection. (A.R. 1121, citing 1069.) That same fall, McGee also denied "dysuria, hematuria, frequency, urgency or urinary incontinence. (A.R. 1121, citing 1091.) In 2011, the ALJ notes that McGee's records do not describe the frequency of total bladder loss McGee described, only leaking and voiding intervals every 30 minutes to 3-4 hours. (A.R. 1121, citing 782, 1071.) The ALJ also noted that her "voiding intervals [had] improved to 1-1/2 to 2-1/2 hours" following an "InterStim" treatment in October 2011 (A.R. 1121, citing 1090); and by 2013, she reported that her neurogenic bladder problems were controlled very well. (A.R. 1121, citing 935.) The ALJ made several more findings in the record to show that, contrary to McGee's testimony, the records show that McGee's urinary incontinence was effectively treated and largely in control. (A.R. 1122; *see e.g.* A.R. 346-347, 775, 782, 928, 991-993, 1083.)

In sum, although this Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing.")
/ / /

**B.     Compliance with the Remand Order**

McGee also argues that the ALJ ignored this Court's March 19, 2018 Order, and thus the Ninth Circuit's holding upon which the order relies.  (Doc. 9 at 17.)  Specifically, McGee asserts that the ALJ failed to allow for emergency "on demand" use of a restroom in the RFC hypothetical to the vocational consultant or his final decision.  (*Id.*)

The Commissioner argues that the ALJ complied with this Court's order as well as the Ninth Circuit's remand order, and that substantial evidence supports the ALJ's findings, including clear and convincing reasons for discounting McGee's symptom-based testimony.  (Doc. 10 at 7-22.)

The Court agrees with the Commissioner.  Neither the Ninth Circuit's decision nor this Court's remand order required the ALJ to find that McGee required immediate access to a restroom.  The Ninth Circuit directed a "remand to the Social Security Administration to make additional step-five findings, incorporating McGee's non-exertional limitations."  *McGee*, 556 Fed.Appx. at 618.  This Court directed that ALJ to "more clearly delineate Plaintiff's requirements with respect to restroom access, especially including whether she requires ready access to the restroom …."  *McGee v. Berryhill,* 2018 WL 1378750 at *16.  Therefore, the ALJ was required to consider the limitations by McGee's incontinence, and make additional findings as to whether immediate access was

15

required.  As previously discussed, the ALJ did so in context of McGee's testimony, making extensive findings regarding the nature and extent of her condition which was supported by substantial evidence in the record.  (*See* A.R. 1120-1123.)  The ALJ found that McGee's urinary incontinence had improved through treatment and was largely in control.  (A.R. 1122; *see e.g.* A.R. 346-347, 775, 782, 928, 991-993, 1083.)  Further, the ALJ found McGee's records show her accidents involved less dramatic leaking related to stress incontinence – laughing, sneezing, coughing, running.  (A.R. 1122, citing A.R. 346, 782, 1065, 1071.)  The ALJ then accounted for McGee's bladder problems and limitations in the RFC, allowing ready access to a restroom and bathroom breaks every 90 minutes, which falls within the range of McGee's testified need for bathroom breaks every 1 to 1.5 hours (A.R. 531, 1122), and within the voiding frequency discussed in her medical records.  (A.R. 1090.)  The RFC excluded the frequency of total or complete loss accidents because such allegations were not corroborated by medical evidence.  (A.R. 1122.)

     These findings satisfy the Ninth Circuit's remand to make additional step-five findings incorporating her non-exertional limitations, and this Court's remand order to "more clearly delineate Plaintiff's requirements with respect to restroom access …"  See *McGee v. Berryhill,* 2018 WL 1378750 at *16.

Second, the ALJ defined and clarified the meaning of certain types of "breaks" that this Court found ambiguous in *McGee v. Berryhill*. (A.R. 1155-1156.) The ALJ discussed that standardized breaks meant "one at mid-shift, which is typically right in the middle of the eight hours, usually either 30 minutes in length or 60 minutes in length," plus two additional normal breaks of 15 minutes in the middle of each halves of the shift. (*Id*.) Next, the ALJ defined ergonomic breaks as those that are encouraged in sedentary jobs to get up and stretch or walk for 30 seconds to a minute. (A.R. 1156.) These definitions clarified the ambiguity that the Court found in *McGee v. Berryhill,* 2018 WL 1378750 at *12.

## V.  Conclusion

For the foregoing reasons, the Court orders that the Commissioner's decision is **AFFIRMED**.

**IT IS ORDERED**.

DATED this 20th day of October, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge